**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **Zinus Inc., Mellow Inc., and Keetsa Inc.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA**<br><br>**Defendants.** | **Court No. 26-04409** |

**COMPLAINT**

1. Plaintiffs Zinus Inc. ("Zinus U.S."), Mellow Inc., and Keetsa Inc. ("Plaintiffs") are importers of merchandise subject to the duties challenged in this complaint. Similar to challenges raised by other similarly-situated plaintiffs, Plaintiffs bring this action to ensure that any duties Plaintiffs paid pursuant to such tariff actions are properly refunded.

2. Starting in February 2025, the President of the United States signed a series of executive orders invoking IEEPA as the basis for imposing broad new tariffs ("IEEPA duties") on goods entering the United States from nearly every country, including countries from which Plaintiffs source their imports. As importers of record, Plaintiffs were responsible for paying IEEPA duties on goods they imported into the United States.

3. IEEPA does not authorize the imposition of those tariffs. This Court and the Court of Appeals for the Federal Circuit ("Federal Circuit") held that IEEPA does not authorize the President to impose these tariffs. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.

2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). The U.S. District Court for the District of Columbia also found that the same tariffs were not authorized by the IEEPA statute. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

4. On February 20, 2026, the United States Supreme Court affirmed the Federal Circuit's holding in *V.O.S. Selections* that IEEPA does not authorize the President to impose tariffs. *See Learning Resources, Inc., et al. v. Trump*, 607 U.S. 229, slip op. at 1–2, 20–21 (2026).

5. Although the tariffs at issue have been found to be unlawful by the Supreme Court, that decision may not guarantee full refunds for all affected importers, making this action necessary for Plaintiffs to obtain complete relief.

6. On June 2, 2026, the Department of Justice appealed this Court's order requiring the issuance of refunds. In appealing the Court's order, the government indicates its position that refunds for finally liquidated entries may not be available absent an importer-specific court order. Accordingly, Plaintiffs bring this action to request the Court to order the refund of the unlawful duties Plaintiffs have paid to date, particularly any such duties that are not eligible for refund under U.S. Customs and Border Protection's current Consolidated Administration and Processing of Entries ("CAPE") refund claim process.

7. In this action, Plaintiffs seek an order requiring the full refund of all IEEPA tariffs Plaintiffs have paid to the United States as of the date of such order, with interest, through reliquidation as necessary, or a money judgment equal to the same amount. Recognizing that this Court is currently engaged with the U.S. Department of Justice and U.S. Customs and Border Protection on appropriate refund procedures and legal remedies, Plaintiffs reserve the

right to modify the relief sought via this Complaint pending further developments from the Court and relevant agencies on these issues.

## PARTIES

8. Zinus U.S. and Mellow Inc., are wholly-owned by Zinus Inc., a publicly traded Korean corporation on the Korea Exchange. Keetsa Inc. is a California corporation that is wholly-owned by Zinus U.S. Plaintiffs acted as the importers of record for entries of merchandise into the United States that were subject to the invalidated IEEPA tariffs.

9. Defendant U.S. Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security ("DHS"), headquartered in Washington, D.C. CBP is responsible for administering and collecting duties and taxes on goods imported into the United States.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendant United States of America received the invalidated tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12. Defendants are collectively referred to in this Complaint as "CBP" or "Defendants."

## JURISDICTION

13. This Court has subject-matter jurisdiction under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *affirmed, Learning Resources, Inc., et al. v. Trump*, 607 U.S. 229, slip op. at 1–2, 20–21 (2026).

14. In addition, this Court possesses the same authority in law and equity as a district court of the United States. *See* 28 U.S.C. § 1585. Where a civil action arises under 28 U.S.C. §

1581, this Court may issue money judgments against the United States and grant any other appropriate remedy, including, but not limited to, declaratory relief, injunctions, remand orders, and writs of mandamus or prohibition. *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

15. This Court has recently affirmed this jurisdictional basis under 28 U.S.C. § 1581(i) and its ability to order the relief requested in this complaint, including via reliquidations of affected entries. *See AGS Company Automotive Solutions v. U.S. CBP*, et al., Slip Op. 25-154 (Ct. Int'l Trade 2025); *Atmus Filtration, Inc. v. United States*, No. 26-01259 ECF No. 21 (Ct. Int'l Trade Mar. 4, 2026).

**STANDING**

16. Plaintiffs have standing to sue, because they were importers of record for merchandise subject to the IEEPA tariffs imposed by Defendants. Plaintiffs paid such tariffs and have therefore suffered direct injury; they are therefore entitled to judicial review and relief. *See* 5 U.S.C. § 702 (stating that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof"); 28 U.S.C. § 2631(i).

**TIMELINESS**

17. An action under 28 U.S.C. § 1581(i) must be brought within two years after the cause of action first accrues. *See* 28 U.S.C. § 2636(i).

18. The initial IEEPA tariffs covering products imported from Canada, Mexico, and China were imposed pursuant to executive orders signed on February 1, 2025. *See* Executive Order 14194, *Imposing Duties to Address the Situation at Our Southern Border, 90 Fed. Reg. 9117* (February 7, 2025); *Executive Order 14193, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (February 7, 2025); and *Executive Order 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic*

*of China*, 90 Fed. Reg. 9121 (February 7, 2025). A number of amendments to these executive orders were issued subsequently. On April 2, 2025, the President issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, imposing IEEPA tariffs on nearly all U.S. imports. A number of amendments were also subsequently issued to that order.

19. Plaintiffs have commenced this action within two years of the above executive orders.

## GENERAL PLEADINGS

### I. The Supreme Court has Held that IEEPA Duties are Not Authorized

#### A. The IEEPA Duties

20. On February 1, 2025, the President issued three executive orders imposing new tariffs on imports from Mexico, Canada, and China. Each order invoked IEEPA as the statutory basis for authorizing the tariffs. Each order justified the tariffs as necessary to address a claimed national emergency related to risks arising from alleged trafficking of illegal drugs into the United States and/or risks arising from illegal immigration. Collectively, Plaintiffs refer to these orders as the "Trafficking Tariff Orders."

21. Executive Order 14194, 90 Fed. Reg. 9117, *Imposing Duties to Address the Situation at Our Southern Border* ("Mexico Tariff Order"), imposed an additional 25 percent tariff on imports from Mexico. The order justified the use of emergency powers by citing risks allegedly arising from an influx of illegal immigration and illicit drugs into the United States and Mexico's alleged failure to take action to counter those risks. *Id.*

22. Executive Order 14193, 90 Fed. Reg. 9113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"), similarly declared an emergency tied to opioid trafficking and imposed 10 percent and 25 percent additional tariffs on imports from Canada.

23. A third order, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff Order"), declared a national emergency related to opioid trafficking, asserting that "the sustained influx of synthetic opioids" constituted a national emergency and claimed that chemical suppliers based in China evaded enforcement efforts by hiding "illicit substances in the flow of legitimate commerce." This order imposed an additional 10 percent *ad valorem* duty on imports of Chinese goods.

24. On March 3, 2025, the President issued an amendment to the prior China Tariff Order via Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment"). This amendment increased the tariff rates imposed by the February 1, 2025 China Tariff Order to 20 percent on the basis that China had failed to take adequate steps to combat the illicit drug crisis.

25. On July 31, 2025, the President issued an amendment to the prior Canada Tariff Order via Executive Order 14325, 90 Fed. Reg. 37,957 *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*. This amendment increased the tariff rates imposed by the February 1, 2025 Canada Tariff Order to 35 percent.

26. On April 2, 2025, citing the persistent U.S. trade deficit as a separate national emergency, the President issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating*

*Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficit* ("Reciprocal Tariff Order"). This order imposed a baseline 10 percent tariff on nearly all U.S. imports effective April 5, 2025, and increased the "reciprocal" tariffs on 56 countries and the member states of the European Union effective April 9, 2025. The higher country-specific rates ranged from 11 to 50 percent.

27. On April 8, 2025, the President signed Executive Order 14259, increasing the reciprocal tariff applicable to China from 34 to 84 percent in response to tariffs imposed by China on U.S. goods as retaliation for the U.S. tariff actions. *See Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (April 14, 2025).

28. On April 9, 2025, the President signed Executive Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, which suspended the higher country-specific tariffs on all countries, except China, for 90 days. The same order raised the "reciprocal" tariff rate imposed on China-origin goods from 84 to 125 percent. As a result, most Chinese-origin goods faced a combined 145 percent IEEPA-based tariff as a result of the 20 percent trafficking tariff and the 125 percent reciprocal tariff.

29. On July 31, 2025, the President issued Executive Order 14326, modifying the tariff applied by the Reciprocal Tariff Order on certain trading partners. *See* Executive Order 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963, 37,963–64, 37,967 (Aug. 6, 2025). As with the initial Trafficking and Reciprocal Tariffs, this amendment continued to invoke IEEPA and implemented changes to the Harmonized Tariff Schedule of the United States ("HTSUS").

30. The President also issued the following executive orders under which duties were collected for a certain period of time before the orders were terminated: Executive Order 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (Aug. 5, 2025); Executive Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025). As with the Trafficking Tariff Orders and Reciprocal Tariff Order, these orders invoked IEEPA and implemented changes to the HTSUS.

31. In implementing these executive orders, the Defendants directed modifications to the HTSUS so that merchandise subject to the new duties would instead enter under newly assigned tariff codes.

**B. Litigation Challenging the IEEPA Tariff Orders**

32. On April 14, 2025, multiple companies filed an action in this Court challenging the legality of the executive orders imposed under IEEPA. *See V.O.S. Selections, et al. v. Donald Trump, et al.*, No. 25-cv-00066 (Ct. Int'l Trade 2025). This Court held that the orders were unlawful, and the Federal Circuit affirmed. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). On February 20, 2026, the United States Supreme Court affirmed the Federal Circuit's judgment, holding that IEEPA does not authorize the President to impose tariffs. *See Learning Resources, Inc., et al. v. Trump*, slip op. at 20 (2026).

**C. Implementation of the Unlawful Tariffs by Defendant CBP**

33. CBP is responsible for administering and collecting duties imposed under U.S. law, including the IEEPA-based tariffs at issue. *See* 19 U.S.C. §§ 1500, 1502.

34. Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the HTSUS. *See* 19 U.S.C. § 1292; Pub. L. No. 100-418, 102 Stat. 1107 (1988). Under the HTSUS framework, CBP classifies goods entering the United States using an organized structure of chapters, headings, and subheadings, each identifying goods and corresponding duty rates. The HTSUS headings cover broad categories of merchandise, while the subheadings provide more specific classifications.

35. CBP regulations govern how merchandise must be classified and appraised under the HTSUS. *See* 19 C.F.R. § 152.11. The U.S. International Trade Commission ("USITC") publishes and maintains the HTSUS in accordance with presidential directives. *See* 19 U.S.C. §§ 1202, 3005, 3006.

36. CBP is responsible for assessing and collecting duties on imported merchandise based on classification within the HTSUS according to established tariff rates. 19 U.S.C. §§ 1202, 1500, 1502.

37. In implementing the challenged tariff orders, CBP required that goods subject to the IEEPA duties be classified under newly created tariff codes — codes that exist solely because of the executive orders that the Supreme Court has now declared unlawful.

## II. Plaintiffs Paid Unlawful IEEPA Duties

38. As of the date of this Complaint, Plaintiffs have paid IEEPA duties imposed under the Trafficking Tariff Orders and Reciprocal Tariff Order.

39. Plaintiffs' imports subject to unlawful IEEPA duties entered the United States under newly created HTSUS codes that exist only because of the unlawful tariff regime.

40. Plaintiffs paid the unlawful IEEPA duties on a continuous basis while the operative executive orders were in effect.

41. Certain entries for which Plaintiffs paid the unlawful IEEPA duties remain ineligible for administrative refunds via CBP's CAPE refund portal.

42. Plaintiffs bring this action to ensure that already liquidated entries are reliquidated without such duties, and all prior IEEPA duties paid are refunded to Plaintiffs.

**STATEMENT OF CLAIMS**

**COUNT I: THE CHALLENGED TARIFF ORDERS ARE ULTRA VIRES**

43. Plaintiffs incorporate by reference paragraphs 1–42 above.

44. This Court found that the challenged tariffs in this Complaint are not authorized by the IEEPA statute. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025) (granting summary judgment for plaintiff to prevent enforcement of IEEPA tariffs). The Federal Circuit affirmed this Court's decision on appeal. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). The United States Supreme Court has now affirmed the Federal Circuit's judgment, holding that IEEPA does not authorize the President to impose tariffs. *See Learning Resources*, *et al. v. Trump*, slip op. at 20.

45. Plaintiffs respectfully request this Court to order CBP to refund all IEEPA duties collected from Plaintiffs since their imposition, plus interest as provided by law, whether via reliquidation of entries or as a money judgment.

**COUNT II: DECLARATORY RELIEF**

46. Plaintiffs incorporate by reference paragraphs 1–45 above.

47. Under 28 U.S.C. § 2201(a), federal courts may declare the rights and legal relations of parties where an actual controversy exists.

48. An actual controversy exists here concerning the President's asserted authority to impose tariffs under IEEPA, and CBP's authority and obligation to reliquidate entries that were liquidated subject to the unlawful tariffs.

49. Plaintiffs have suffered injury by having been required to pay IEEPA duties as a result of the Trafficking Tariff Orders and the Reciprocal Tariff Order on merchandise Plaintiffs imported into the United States.

50. This Court may exercise its equitable authority to issue a declaratory judgment that the invalidated Trafficking Tariff Orders, Reciprocal Tariff Order, and other subsequent orders imposing tariffs pursuant to IEEPA, are unlawful for any of the reasons set forth above, and that CBP lacks authority to implement or collect the resulting duties as to Plaintiffs via modifications to the HTSUS and resulting collections of IEEPA tariffs.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that this Court:

(a) Enter judgment in favor of Plaintiffs;

(b) Order the United States to refund Plaintiffs, with interest as permitted by law, all funds Plaintiffs paid on entries pursuant to the IEEPA tariffs and the associated executive orders, including by ordering Defendants to reliquidate previously liquidated entries, if necessary;

(c) Grant Plaintiffs such other relief, including any justified award of reasonable costs and legal fees, as the Court may deem appropriate.

Respectfully submitted,

/s/ Lynn Fischer Fox
Lynn Fischer Fox
J. David Park
Henry D. Almond
Kang Woo Lee
Archana Rao Vasa
Sally Alghazali
Jennifer "Ellie" Farrin

*Counsel to Plaintiffs Zinus Inc., Mellow Inc., and Keetsa Inc.*

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5601
Fax: (202) 942-5999

**Dated: October 7, 2026**